UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| EDUCATIONAL CREDIT MANAGEMENT CORPORATION, | § § § | |
| Appellant, | § | |
| VS. | § | CIVIL ACTION NO. H-11-57 |
| | § | |
| BARBARA ANN SMITH, | § § | |
| Appellee. | § | |

## OPINION AND ORDER

Appellant Educational Credit Management Corporation ("ECMC")[1] appeals from the final judgment of the United States Bankruptcy Court in the Southern District of Texas ("Bankruptcy Court") as set forth in the Bankruptcy Judge's Findings of Fact and Conclusions of Law (Doc. 13) issued in Adversary Case 09-03516.

I. Background and Relevant Facts

From July 3, 2003 through August 30, Appellee Barbara Ann Smith ("Smith") obtained three Parent Loan for Undergraduate Student ("PLUS")[2] loans from Wells Fargo Education Financial Services ("Wells Fargo"), to pay for her daughter's education at Austin Business College. Findings of Facts and Conclusions of Law, Doc. 13 at 1.By September 2005, the three loans totaled about $18,500. *Id.*

In September 2005, Smith contacted Wells Fargo and asked that the three loans be combined into a single payment. *Id*. In response, Wells Fargo sent Smith a letter dated September 24, 2005, including instructions on how to consolidate the loans. *Id*. The letter "congratulated" Smith for having completed the first step toward a consolidated loan and

---

[1] ECMC is a national guaranty agency that provides loans for higher education.

[2] In 2005, the PLUS loan program was changed to permit their use for graduate studies. As a result the acronym is not longer used. Undergraduate and graduate PLUS loans now fall under the moniker of Federal PLUS loans.

1 / 15

enclosed a "Federal Consolidation Loan Application and Promissory Note." *Id*. In order to consolidate the loan, the application needed only to be signed and returned to Wells Fargo Education Financial Services. *Id*. at 1–2. The Bankruptcy Judge found that on September 30, 2005, Smith signed and returned the application. *Id*. at 2. "Wells Fargo contends that it never received that documentation." *Id*.

On October 14, 2005, Smith filed for bankruptcy under Chapter 7 of the Bankruptcy Code. Appellee's *Id*. at 2. Smith did not seek a determination that the student loan debt was dischargeable. *Id*.

On December 8, 2005, Wells Fargo wrote Smith, stating that it had recently learned of her bankruptcy petition, and that Wells Fargo was "cancelling any pending disbursements on [her] student loans." *Id*. The letter further stated that future consideration for student loan benefits would require Smith to sign a new Master Promissory Note. The letter did not discuss loan consolidation. *Id*.

On March 7, 2006, Smith received a Chapter 7 discharge. *Id*. The discharge did not include the student loan debt. *Id*.

On April 27, 2006, Smith signed an application to consolidate her three existing PLUS loans into a single loan under the Federal Family Education Loan Program ("FFELP"). *Id*. Wells Fargo Education Financial Services prepared this document. *Id*. Smith testified that she thought the document was a re-documentation of the consolidation that she had previously asked for, and apparently received prior to the filing of the bankruptcy case. *Id*.

The Bankruptcy Judge determined "[Smith] tried to pay the student loan after receiving her bankruptcy discharge, but was unable to do so." *Id*. at 4. Smith testified that before the loan consolidation she made seven payments of approximately $50.18 toward the unconsolidated

student loans. Smith's Ex. 7, Adversary Case 09-03516. Subsequent to the consolidation, Smith made four payments totaling $62. *Id.*

Subsequent to a hearing on December 3, 2010, the Bankruptcy Judge found that Smith applied for loan consolidation prior to filing her bankruptcy case and that she signed and returned loan consolidation forms, the last step she could take towards loan consolidation, to Wells Fargo. *Id.* at 2. The Bankruptcy Judge found that the Smith met her burden of establishing undue hardship, and thus discharged the student loans. *Id.* at 2, 6.

Smith is a 56 year old married female high school graduate. *Id.* at 3. She is employed by MD Anderson Hospital as a clerical employee. *Id.* Smith's annual salary is $28,644.00. *Id.* The Bankruptcy Judge found that she has no prospects for a better job or for promotion by her current employer. Doc. 13 at 3. Further, the Judge found that after taxes and a mandatory retirement deduction, Smith takes home about $1,500 per month. *Id.* However, in a few years, Smith's income will decrease when she retires. *Id.* at 4. Her husband, Freddy Smith ("Freddy") is disabled and has no income. *Id.* at 3.

As stated above, Smith obtained three PLUS loans for her daughter's education. *Id.* at 1. Her daughter attained an Associates Degree at Austin Business College, but has been unable to find employment in her field of study. *Id.* at 1. In 2007, Smith's daughter, and her infant child— Smith's granddaughter—moved back into Smith's mobile home because the daughter was unable to support herself. *Id.* Smith's daughter works part time as a cashier at Wal-Mart. *Id.* at 3. Typically, the daughter works 28 to 36 hours per week at the rate of $8.70 per hour. *Id.* She earns about $270 per week before Medicare and taxes. *Id.* She does not receive any child support. *Id.* When able, Smith's daughter contributes $300 per month to Smith in lieu of rent. *Id.* This money helps the family with living expenses. *Id.* However, Smith testified that she "usually ends up

giving the money back to her [daughter]." Doc. 3-15 at 69. The Bankruptcy Judge found that Smith's total family income is about $1,800 per month. Doc. 13 at 3. Further, the Judge found that Smith's "husband will be 62 years old in April and will begin to receive about $500 per month in social security income." *Id*. at 3.

Smith, her husband, daughter, and granddaughter live in an old mobile home on land that was inherited from Smith's husband's parents. *Id*. at 3. The mobile home and her two cars regularly need repair. Doc. 13 at 3. Smith needs surgery to remove uterine polyps, but cannot afford the deductible on her health insurance. *Id*. Smith takes medicine regularly for anxiety and depression. Doc. 3-14 at 33. Her husband Freddy is deaf and suffers from hernias, anxiety, and arthritis. Doc. 3-14 at 26. He needs dental work but the family does not have dental insurance and cannot afford treatment. *Id*.

The Bankruptcy Judge found that Smith "is able to pay bills as they come due only by postponing medical care, home repairs, car repairs and other expenses when necessary." *Id*. at 4. Smith could not maintain a minimal standard of living for herself and her dependents if she were required to repay the student loan. *Id*. The Bankruptcy Court discharged the loan because repayment of the debt would constitute an undue hardship. *Id*. at 1, 6.

On December 14, 2010, the Bankruptcy Court entered a final judgment in the bankruptcy case. *Id.* Defendant ECMC appeals.

II. Standard of Review

This Court exercises jurisdiction over the pending appeal pursuant to 28 U.S.C. § 158(a)(1). An appeal from a bankruptcy court to a district court is "taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts[.]" 28 U.S.C. § 258(c)(2). Thus, a district court applies the same standard of review that a

circuit court would employ. *In re Killebrew*, 888 F.2d 1516, 1519 (5th Cir. 1989).

Specifically, the court reviews findings of fact by the bankruptcy court under the clearly erroneous standard. Inferences drawn from facts are also subject to the clearly erroneous standard of review. Fed. R. Bankr. P. 8013. The Court will reverse the Bankruptcy Judge's findings only when, viewing the evidence as a whole, "[the Court has] a definite and firm conviction that a mistake has been committed." *Canal Barge Co. v. Torco Oil Co.*, 220 F.3d 370, 375 (5th Cir. 2000). Under this standard, if the record "supports more than a permissible interpretation of the facts," the Court accepts that lower court's interpretation of them, absent clear error. *United States v. Santiago*, 410 F.3d 193, 197 (5th Cir. 2005); *see also United States v. Gibbs*, 421 F.3d 352, 357 (5th Cir. 2005).  Issues of law and mixed questions of law and fact are reviewed de novo. *U.S. Abatement Corp. v. Mobil Exploration and Producing U.S., Inc.*, 79 F.3d 393, 397–98 (5th Cir. 1996); *Heartland Fed. Sav. & Loan Ass'n v. Briscoe Enter., Ltd. III*, 944 F.2d 1160, 1163 (5th Cir. 1993).

The clearly erroneous standard applies to matters on which conflicting testimony has been presented and the bankruptcy judge has been required to assess the credibility of the witness. *Matter of Lenard*, 849 F.2d 974, 976–77 (5th Cir. 1988).  Further, due regard shall be given to the bankruptcy court's opportunity to judge the credibility of witnesses. Fed. R. Bankr. P. 8013.  Bankruptcy court's assessment of credibility of witnesses usually will not be held to be clearly erroneous. *Yaquinto v. Greer*, 81 B.R. 870, 878 (N.D. Tex. 1988).

Because factual findings cannot be set aside unless clearly erroneous, an appellate court may not find facts or view the evidence differently as a matter of choice or reweigh the evidence on appeal simply because it disagrees with the choices made by a bankruptcy judge. *Musslewhite v. O'Quinn*, 270 B.R. 72, 77 n.5 (S.D. Tex 2000). If there are two permissible views of the

evidence, the fact finder's choice of one cannot be clearly erroneous. *Anderson v. Bessener City*, 470 U.S. 564, 574 (1985). The appellant bears the burden of showing that the bankruptcy judge's findings are clearly erroneous. *Musslewhite*, 270 B.R. at 77.

The Court reviews the Bankruptcy Court's conclusions of law *de novo*. *Hickman v. Texas*, 260 F.3d 400, 401 (5th Cir.2001) (citing *In re Mercer*, 246 F.3d 391, 402 (5th Cir.2001)). As a mixed question of law and fact, the Court reviews an "undue hardship" finding *de novo*, but the factual findings on which the conclusion rests for clear error. *Dep't of Educ. v. Gerhardt* (*In re Gerhardt*), 348 F.3d 89 (5th Cir. 2003).

III. Discussion

*Consolidation Prior to Filing for Bankruptcy*

ECMC challenges the Bankruptcy Judge's findings of fact on Smiths loan consolidation prior to bankruptcy. Appellant's Br., Doc. 10 at 16–19. "We are particularly mindful of the opportunity of the bankruptcy court to judge the credibility of the witness." *In re Young*, 995, F.2d 547, 548 (5th Cir. 1993). (internal quotations and citations omitted). "Moreover, when the bankruptcy court's weighing of the evidence is plausible in light of the record taken as a whole, a finding of clear error is precluded, even if we would have weighed the evidence differently." *In re Bradley*, 501 F.3d 421, 434 (5th Cir. 2007). This Court finds no compelling reason to overturn the Bankruptcy Court's findings of fact on the existence of a loan consolidation prior to her bankruptcy proceeding.

In September 2005, Smith contacted Wells Fargo to consolidate her loans. Doc. 13 at 2. "It is undisputed that Wells Fargo sent [Smith] a letter on September 24, 2005, congratulating her on completing the first step for loan consolidation, providing the forms for completion of the consolidation, and indicating that a signature was all that was required." *Id.*. Smith filed for

bankruptcy on October 14, 2005. *Id*. The Bankruptcy Judge found that Smith "applied for loan consolidation prior to filing her bankruptcy case and that [Smith] signed and returned the forms provided for that purpose by Wells Fargo." *Id*.

This case turns on the credibility of Smith who testified during the adversary proceeding. The Bankruptcy Court found that Smith's testimony was credible, and the Bankruptcy Court must be afforded deference in its ability to judge the witness's credibility. For this reason, this Court finds that it was not clearly erroneous for the Bankruptcy Judge to find that Smith signed and sent the loan consolidation application to Wells Fargo, consolidating her loans prior to filing for bankruptcy.

### *The Bankruptcy Court Retains Jurisdiction to Discharge Pre-Bankruptcy Loans*

This case arises under the Bankruptcy Code, over which the District Court has jurisdiction pursuant to 28 U.S.C. § 1334(b). Cases arising under the Bankruptcy Code have been referred to the bankruptcy judges of this district under 28 U.S.C. § 157(a).

The Bankruptcy Court retains jurisdiction to make an "undue hardship" determination and discharge student loans that existed prior to the original bankruptcy proceeding, even when the debtor did not seek discharge of the student loan in the original bankruptcy case. Fed. R. Bankr. P. 523(a)(8); *See also In re Sobh*, 61 B.R. 576, 779–80 (E.D. Mich. 1986). Although a pre-petition student loan is not automatically discharged in a proceeding under the Bankruptcy Code, there is no deadline to discharge a debt after the bankruptcy case is closed. Fed. R. Bankr. P. 4007(b) ("A complaint . . . may be filed at any time.") A debtor may petition the Bankruptcy Court for discharge of pre-petition student loans under 11 U.S.C. § 523(a)(8) any time after the close of the bankruptcy case. *Id*. ("A case may be reopened . . . for the purpose of filing a complaint to obtain a determination under this rule.")

Here, Smith sought a determination of undue hardship under Section 523(a)(8) to discharge her student loan debt. Because the three original student loans were made and subsequently consolidated prior to Smith's bankruptcy petition, the Bankruptcy Court retained jurisdiction to determine the dischargeability of Smith's student loan debt under Section 523(a)(8).

*The Debtor Faces Undue Hardship That Warrants Discharge of Her Loan Obligations*

Title 11 U.S.C. § 523(a)(8) permits discharge of student loan obligations under Section 727 only when "excepting debt from discharge . . . would impose an undue hardship on the debtor and the debtor's dependents." In the Fifth Circuit, courts determine undue hardship under the three prong *Brunner* test. *U.S. Dep't of Educ. v. Gerhardt*, 348 F.3d 89 (5th Cir. 2003) (adopting *Brunner v. N.Y. State Higher Educ. Servs. Corp.*, 831 F.2d 395 (2nd Cir. 1987)). To justify discharging the debtor's student loans, the *Brunner* test requires a three-part showing:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for [himself] and [his] dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*Brunner*, 831 F.2d at 396.

Because the decision to discharge Smith's debt "represents a conclusion regarding the legal effect of the bankruptcy court's factual findings," this Court reviews *de novo* the Bankruptcy Court's application of the *Brunner* test as a mixed question of law and fact. The Court reviews the facts on which that legal determination rests under the "clear error" standard. *Gerhardt*, 348 F.3d at 91; *see In re Frushour*, 433 F.3d 393 (4th Cir. 2005) ("We therefore review de novo the determination of whether a debtor has met the undue hardship standard, and we review the factual underpinnings of that legal conclusion for clear error.").

*Minimal Standard of Living*

ECMC contends that the Bankruptcy Court erred in finding that Smith could not maintain a minimal standard of living if forced to repay her student loans because the Smiths have failed to both minimize their expenses and maximize personal and professional resources. Appellant's Br., Doc. 10 at 29. The Bankruptcy Court found that after taxes and a mandatory retirement deduction, Smith takes home about $1,500 a month. Doc. 13 at 3. ECMC asserts that Smith's testimony at the bankruptcy hearing and her pay stubs from the first nine months of this year indicate a take home income in the range of $1,820 to $1,966 per month and that the Bankruptcy Court's finding was in clear error. Appellant's Br., Doc. 10 at 29. The Court finds that the Bankruptcy Judge's finding was not erroneous, and that Smith will be unable to maintain a minimal standard of living even under the highest figure that ECMC puts forward.

Congress intended debtors to meet a difficult burden under the "undue hardship" standard, higher than the usual hardship that accompanies bankruptcy. *See In re Frushour*, 433 F.3d at 399. To meet that burden, a debtor must first show that repayment of her student loans would leave her unable to meet a minimal standard of living. *See Gerhardt*, 348 F.3d at 91. As ECMC correctly argues, the term "minimal" "does not mean comfortable." *Educ. Credit Mgmt. Corp. v. Stanley*, 300 B.R. 813, 818 (N.D. Fla. 2003). A minimal standard of living is one in which a debtor can pay all reasonably necessary living expenses, but not more. *In re Nary*, 253 B.R. 752, 763–64 (N.D. Tex. 2000).

Here, Smith and her family live in a mobile home in need of regular repairs. Doc. 13 at 3. They have foregone necessary medical and dental care and continue to suffer from medical conditions that require ongoing treatment or medication. *Id*.

This Court will not disturb the Bankruptcy Judge's findings that such a state of financial

affairs leaves Smith unable to make loan payments and maintain a minimal standard of living. The Bankruptcy Court found any current or foreseeable improvement in Smith's financial affairs unlikely. The Court finds that the Bankruptcy Court did not err in its finding that Smith cannot repay the loan and maintain a minimal standard of living.

*Persisting State of Affairs*

Under the second prong of the *Brunner* test, the Court asks whether "additional circumstances exist indicating that this state of affairs is likely to persist [for a significant period of time]." *Brunner*, 831 F.2d at 396. The second prong is intended to be a "demanding requirement" (*In re Brightful*, 267 F.3d 324, 328 (3rd Cir. 2001)) under which the debtor "must specifically prove a 'total incapacity . . . in the future to pay [her] debts for reasons not within [her] control.'" *Gerhardt*, 348 F.3d at 92.

The Bankruptcy Court found that Smith's income will decrease in a few years when she retires and that she has been deferring medical, home repair, and other expenses that will impose future costs. In light of these facts and her current financial circumstances, the Bankruptcy Court found that Smith's "current inability to pay the student loan is likely to persist for the rest of her life." Doc. 13 at 4. This Court agrees.

As previously discussed, Smith and her family are at or below a "minimal standard" of living without the addition of loan payments. Smith's current income is almost completely allocated to bills, repairs, and necessary expenditures such that their family ends every month with around $10 unspent. Doc. 3-15 at 69. The family's finances are so constrained that they forego necessary medical and dental care.

ECMC cites a number of cases for the proposition that a low paying job cannot be considered an undue hardship. *See Spence v. Educ. Credit Mgmt. Corp.*, 541 F.3d 538 (4th Cir.

2008); *In re Brightful*, 267 F.3d 324, 330 (3rd Cir. 2001); *Alderete v. Educational Credit Mgmt.*, 412 F.3d 1200 (10th Cir. 2005). ECMC mischaracterizes these holdings, which are distinguishable on their facts. The debtor in *Spence* worked in a low paying job but had a master's degree and had completed Ph.D. course work. *Spence*, 541 F.3d at 544. The court in that case noted that the debtor had an excellent academic record and an education that enabled her to obtain higher paying work if she so chose. *Id*. The debtor in *Brightful* worked only part time and advanced no explanation of her failure to obtain full time employment and increase her earnings. *In re Brightful*, 267 F.3d at 330. In *Alderete*, a healthy young couple with two young children could not satisfy the "other circumstances" prong of *Brunner* when it was clear that their young children would soon reach the age of majority, lessening the strain on their family budget, and when there was a foreseeable possibility that they would obtain higher paying employment. 412 F.3d at 1205. The Tenth Circuit also noted that the debtors had failed to seek or obtain higher paying employment in any field and that one of the debtors worked as an education assistant during the school year but remained unemployed during the summer. *Id*.

Contrary to ECMC's interpretation, the preceding cases stand for the proposition that low paying employment cannot support a finding of an undue hardship *when a debtor foregoes more lucrative employment*. The Tenth Circuit explained the reason behind the second *Brunner* element in *Alderete*—"A recent graduate's salary might be so low that it is difficult to pay the loans now, but it is clear that his salary will increase in the future and therefore his loans should not be discharged." *Id.*

That reasoning does not apply here. Unlike the debtors in any of the cases on which ECMC relies, Smith has no untapped earning potential. She does not have a degree which might lead to higher paying employment, she works full time, and she is not foregoing more lucrative

employment to work in her chosen field. Doc. 3-14 at 33. The Bankruptcy Judge found that she has no prospects for a better job or for promotion by her current employer. Doc. 13 at 3. She devotes all of her income to necessary expenditures, including supporting her disabled husband. Doc. 13 at 3–4. Smith suffers from uterine polyps which require treatment that she cannot currently afford. Doc. 13 at 3. Because Smith does not have the ability to meet even her current necessary expenditures, any probable future income will be insufficient to allow her to make loan payments and still maintain a minimal standard of living. Based on these facts, the Court finds that the Bankruptcy Judge did not err in his conclusion that additional circumstances exist indicating that Smith's current inability to make loan payments and maintain a minimal living standard is likely to persist.

### Good Faith Efforts to Repay the Loans

The Bankruptcy Judge found, and this Court agrees, that Smith made a good faith effort to repay her loans. A debtor makes a good faith effort to repay loans when she has made "efforts to obtain employment, maximize income, and minimize expenses." *Educ. Credit Mgmt. Corp. v. Frushour*, 433 F.3d 393, 402 (4th Cir.2005).

Smith works full time as a clerical employee. Doc. 13 at 3. "She has no prospects for a better job or for promotion by her current employer." *Id.* There is no evidence that she has foregone more lucrative employment or failed to maximize her income. Instead, there is ample evidence that Smith continuously has minimized or neglected necessary expenses, including medical and dental care and home repair, in order to pay what bills she can and still support her family. Doc. 13 at 4.

ECMC contends that Smith has failed to minimize her expenses by making infrequent payments for her daughter's auto-insurance and car payment. Appellant's Br., Doc. 10 at 33. It is

by no means clear that Smith would end with a net savings if she stopped providing financial assistance to her daughter.   Failure to make periodic car payments on her daughter's behalf would result in the loss of the approximately $325 her daughter contributes from her earnings. The Court finds that the Bankruptcy Judge's finding that Smith has maintained her employment, maximized her income, and minimized her expenses is not clearly erroneous.

Payment history is an important factor within the good faith analysis. The Bankruptcy Judge determined that Smith had "tried to pay the student loan after receiving her bankruptcy discharge, but was unable to do so." Doc. 13 at 4. Smith's testimony at the bankruptcy hearing and the evidence introduced at that hearing convinced the Bankruptcy Judge that Smith secured the student loans in good faith and has repeatedly, if rather ineffectively, attempted to pay off the loans. *Id*. As noted, Smith introduced evidence that she made at least seven payments of approximately $50.18 towards the unconsolidated student loans, then held by Wells Fargo, shortly after obtaining those loans. Smith's Ex. 7, Adversary Case 09-03516.

Subsequent to the consolidation of the three original loans into a single loan, Smith made four payments totaling $62.  Doc. 3-15 at 66. Although these payments are miniscule compared to the amount of the loan, they are significant in light of Smith's testimony that she has, on average "$10 to [her] name" at the end of the month. Doc. 3-15 at 69. Although non-payment of loans is often considered bad faith, Smith's attempts to contribute the maximum she was able under her dire financial circumstances evidence an earnest attempt at repayment. *See Elebrashy v. Student Loan Corp.*, 189 B.R. 922, 929 (Bankr. N.D. Ohio 1995) ("Given the magnitude of the student loan debt, the paucity of [the debtor's] income, and the apparent hopelessness for future improvement of his situation, the fact he made no payments on his student loans until after he had consulted an experienced bankruptcy attorney is not an indication of bad faith.").

13 / 15

ECMC also contends that Smith's decision not to pursue lower-cost repayment options, including the William D. Ford Direct Loan Program, which reduces monthly payments and allows payment over an extended period, demonstrates Smith's lack of a good faith desire to repay her loan debt. Appellant's Br., Doc. 10 at 43; *see* 34 C.F.R. § 685 *et seq*. The Bankruptcy Court concluded that Smith's "having declined that option is not evidence of lack of good faith" on the grounds that Smith was of an advanced age, limited means, and on the verge of retirement and that extending her payment on the loans up to 25 years "would be financial folly." Doc. 13 at 4.

Even if ECMC's contention that Smith's payments would be "around $64 per month" (Appellant's Br., Doc. 10 at 31) under the William D Ford Direct Loan Program is true, Smith still would be unable to make monthly payments in light of her inability currently to afford necessary health care, home repairs, and some monthly bills. After monthly expenses, she retains around $10 in "spare" money at the end of each month. Doc. 3-15 at 69. The record provides no basis for ECMC's contention that Smith "can certainly meet" the $64 per month payments she could expect under the William D. Ford program or the much higher $197 per month payments if she were not in the program.

## IV. Conclusion

The Court finds that the Bankruptcy Court's finding that Smith consolidated her existing student loans prior to filing for bankruptcy is not in error. Further, finding no error in the Bankruptcy Judge's factual findings supporting an "undue hardship" determination, this Court finds that Smith would suffer an undue hardship if she were compelled to continue making payments on her consolidated loan. Therefore the Court

**ORDERS** that the judgment of the Bankruptcy Court is **AFFIRMED** and Smith's

consolidated loan is discharged.

SIGNED at Houston, Texas, this 30th day of September, 2011.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE